Take your time to set up. Let me go ahead and call the second case. It's number 22-13495, Gemini Insurance Company v. Zurich American Insurance Company. Mr. Saverin, whenever you're ready. Good morning. My name is Philip Saverin. I represent the appellant in this case, Gemini Insurance Company. The question presented in this case is very simple. It's whether a provision in an insurance policy that says its coverage does not contribute with other insurance can be harmonized with a provision in another policy that says its coverage does contribute with others. Because the clear answer is yes, the district court's judgment to the contrary should be reversed. Let me give you a crazy hypothetical. We rule in your favor in this case on that first issue. Insurance companies are always updating their policies to take account of legal developments and obligations and the like. Insurance company says we're not going to get caught in the same bind as that happened to that dumb insurance company. We're going to craft a language that says, and if any other insurance policy says we will not contribute, then you know what? We're not contributing either. That's not a crazy hypothetical. That does exist. Then what happens? In that case. I don't contribute. You don't contribute. I don't contribute to your contribution. I don't contribute to your contribution to that contribution. Right. Where does it stop? We have those cases and those cases say that in that case, they attach at the same level. The other insurance provisions are mutually repugnant and they apply pro rata. There's a concept in insurance coverage called the tower of insurance. That there's different layers. There could be a first layer excess, second layer excess, so on and so forth. The way that those towers are built is by looking at the other insurance clauses in the policy. In the AIG premier case, for example, both policies said that. Both policies say we don't contribute with the other and the court said that's mutually repugnant. They apply pro rata. But where you have one policy that says we don't contribute and the other one says we do contribute pro rata, that means that they do not attach at the same level. The Ferris case I wanted to point out is important because it says very clearly Florida law is that where two policies provide coverage for the same loss, one of which is pro rata and the other which is pure excess, courts give effect to the pure excess provision. That's a direct quote. In that case, the progressive policy says it's excess over any other insurance. That's all it said. Didn't say we don't contribute. Just says we're excess over any other insurance. Same thing as we don't contribute to other insurance. State farm policy says that we pay the proportion that the coverage bears to all other excess policies. The court in Ferris said that the progressive clause is pure excess. The state farm is pro rata. Therefore, progressive policy is excess to state farms. Second case that we rely on is the Bean case. In that case, the Aetna policy says we're excess over other valid and collectible insurance. That's all it said. American states policy says shall be excess and shall not contribute with other insurance. Those are quotes. The court there said policies are not mutually repugnant. That American states policy is excess to Aetna. That's exactly what we have in this case. We have a bit of a conflict between Aetna and Bean, however you want to call it, that you just referenced, and the middle district's decision in AIG. What do we do? I don't believe we have a conflict between those two, Your Honor. I said a bit of a conflict. They certainly are in tension with each other, right? I don't believe so. Not when you look at the language and the reasoning of those cases. In AIG, the RLL policy says it was excess and would not contribute. The AIG policy says it shall not apply if the other insurance is specifically written to be in excess of this policy. It didn't even say shall not contribute. Just said shall not apply if other insurance is specifically written to be in excess of the policy. Same thing that we had in the Ferris case. Same language there that was a pure excess clause. So where you have that pure excess clause and the other pure excess clause that says we're excess and shall not contribute, they are both saying the same thing. They're saying we're not going to contribute and we're excess over all other insurance. They're mutually repugnant. And in fact, what the court said in the AIG premier case is that both clauses, this is a quote, both other insurance clauses either expressly negate contribution with other carriers or otherwise manifest an intent to be excess over the other excess policies. So what the court was saying in the AIG premier case is that these policies both say that they don't contribute with the other one and therefore they're mutually repugnant. That is not in conflict at all with the Bean decision where one policy says that it's excess and shall not contribute and the other one says it's just excess over other insurance. So for that reason, I don't think those two cases are in contention. I was going to ask you about some other languages that I had a question about in this policy. It says, just explain to me how this is supposed to work, I guess. It says, this condition will not apply to insurance specifically written as excess over this policy. What is that referring to when you're talking about insurance specifically written as excess over the policy? Okay. That's the tower that I was referring to. There could be another policy. What would it say though? What it would say is it would list the Zurich policy as underlying insurance or it would have a higher SIR or retain limit where it says that we apply once X amount of dollars is exhausted by other insurance. In that situation, that policy would attach over the Gemini policy. That's how the tower is built, Your Honor. So the first sentence, I think I understand. So the first sentence, this insurance is excess over and shall not contribute with any of the other insurance, whether primary, excess, contingent, or on any other basis, you would be saying that sentence addresses just general insurance that's available out there to cover the same risk. The second sentence would be addressed to insurance that specifically is an umbrella policy or something like that. Yes. They have to look at it. There's in the briefing, there's language and even the district court, I think it was he picked up on this that Florida does not represent super excess. What that means is, you know, closet say we're excess over whatever else is out there. You know, we're excess over it. That's not the Gemini policy doesn't need to have that extra language, but it's making clear that we're excess over other insurance unless that insurance is above us in the tower and just making clear that we then would fit in in that position in the tower. So just to summarize our argument on the main appeal, Zurich's policy says, let me put it this way, give a hypothetical. If Zurich's policy had the same language, the non-contributory, then we'd be where we are now, that they're mutually repugnant and they apply pro rata. But because it doesn't say that and Gemini's does, therefore, Gemini's policy is excess and the judgment should have been for a million dollars instead of the $500,000. I recognize that there's a cross appeal on the prejudgment interest portion. Is that something I would address in my rebuttal? It's your choice. You can start addressing it now or address it in your rebuttal argument however you choose to do it or you can divide your time. I've got two minutes or I'll take a shot. Let me just go back to the, I mean. Yes, please. So the other side of the case distinguishes being on the idea that being involved in umbrella policy and so isn't that the kind of policy that would be specifically written to be above the, I mean, explain that. I understand the question and the way to answer it this way is that a policy can be primary in some circumstances and excess in others. Same as we have in Zurich's policy, for example, depending on who's the ownership is of the tractor or the trailer. When you look at the other insurance clauses, that's how you determine where they attach. It doesn't matter how you got there. The parties have stipulated on the facts that both policies cover this loss. It's just a question of which one comes first and then the valuation of that. In the record, they've admitted that the self-insured retention under the Gemini policy was met the million dollars because the Gemini policy is $3 million over a million dollars. However, you get there, once you have them at the same level, you have to look at the other insurance clauses, determine how they fit or don't fit together. It really doesn't matter in the Bean case whether one was primary in some circumstances and excess in other. What matters is that when you're looking at whether they're co-primary or co-first layer excess or co-second layer excess, you're still looking at the policy based on the claim that's if that makes sense. Yeah, so just to make sure I understand that. So you're saying that if we look into the details of Bean, we'll see that whatever the policy said, at the end of the day, they were on the same level just as they are here? Exactly. Thank you. All right. Thank you very much. Ms. Ryder. Thank you. May it please the court. I'm Alyssa Ryder of Wicker Smith on behalf of the Appley Cross Appellant, Zurich American Insurance Company. The big picture here, which I'd like to start with, is that we have two primary policies issued for commercial automobile liability coverage to two corporations, and each of the policies are on the same level in terms of towers of insurance. Appellant is discussing towers of insurance. I think that's different than the concept of other insurance. So a tower of insurance, very often you have a large corporation will have a tower of insurance. It has a primary policy. Then it has a first layer excess policy. That first layer excess policy will typically say in the declarations page, this policy is excess over these policies that are listed below, and you have a schedule. And then there's a second layer excess policy or an umbrella policy. So each policy is stacked on top of the other, and they typically will explicitly state on their deck page how the priority of coverage goes. That's different than our situation. We're not talking about towers of insurance here. What we're talking about are two equivalent policies, two primary policies that were issued that would otherwise, assuming... To different entities. Correct. To different entities. And presuming that there was no other insurance out there, each of those policies would have provided primary coverage to its named insured. So now we have a situation where there are additional insureds, where there's other insurance because we have a tractor, we have a trailer, we have a driver, we have different policies which all are now being triggered for whatever reason because of their particular insured or additional insured to cover the same accident. And now we have to look at these two comparable policies and decide between the two of them, how is the money divided? And that's when we go to the other insurance clause. So there's no debate that Zurich owed Gemini some money. The question is how much money still, if any, is outstanding in terms of being owed to Gemini? Exactly. And we look to the other insurance clause of each policy in order to answer that question. And what do both these clauses provide? That they're access to other insurance. In Florida, which the parties agree Florida law applies, there's only three types of other insurance clauses. There's a clause that says if there's other insurance, we prorate. There is a clause that says if there's other insurance, then we now become excess. Or there's one that says if there's other insurance, we don't pay anything, an escape clause. The parties agreed at the outset that both of these policies had excess other insurance clauses. If you look at the complaint, paragraph 23. I think you're right that that's not disputed. But the critical part of this case seems to me to be, although you describe the policies as having the same general coverage, they're both primary, they both have other insurance clauses or whatever, it is also undisputed that there is a variation in language between the two clauses. That's true. Their job is to tell us why that difference in language makes a difference that matters. And you have to tell us why that difference in language doesn't matter. Okay. And there's at least two reasons it doesn't matter. Number one, there is no Florida case that has ever said that you need a word for word identical provision in order for the mutual repugnancy rule to apply. The mutual repugnancy rule basically says if you have two other insurance clauses that both say if there's other insurance, I'm now excess, that's mutually repugnant. They cancel each other out. And then what you're left with is pro rata allocation, which is what Zurich always had pushed for. So there's no Florida case. And we challenged the appellant in our answer brief to point out a Florida case where any required a word for word identical wording. But for repugnancy, don't you need things that are impossible to harmonize? Well, the courts have not gone to that degree. And to answer your question also, I want to bring back a point you made at the outset of the argument. You posed a hypothetical about if the carriers start changing the language in their policy, where does it stop? And I think that's a good point. And that's the reason that courts don't start analyzing every word in the excess other insurance provision to decide if they're mutually repugnant. If it fits into the category of being an excess clause and the other policy also fits in the category of being an excess other insurance clause, then that on its face is mutually repugnant. And we don't dig through every word. And in fact, that's a point that was made in this case certain underwriters at Lloyd's, which we cite in our brief. If you look at page 1321 of the opinion, the court talks about how certain language in the clause. And they say, indeed, such a holding would imply that one other insurance clause has a higher degree of excessness over another. Florida law has not given effect to super excess clauses. And Defendant Scottsdale has not pointed the court to any authority indicating otherwise. And the same is true today. Let me ask, since you raised it, I mean, can you address Ferris? I mean, I understood your brief to argue that just we should disregard Ferris because it was wrongly decided. Is that your position? Well, that is part of my position is I do think that Ferris was wrongly decided for several reasons we point out in the brief. Not the least of which is if you look at the. I can't say today, though, that no state court in Florida has recognized a super excess clause of Ferris if that's what Ferris does, right? Well, they. Ferris does use that term super excess. I could not find any other case in Florida that has ever used that term before or after. So in that regard, it's certainly an outlier. But when you take that. Oh, I'm sorry. It doesn't use the term super excess. It uses the term pure excess. But if you take Ferris, even though you think it might have been wrongly decided and you put it together with Bean, which is somewhat cryptic in its explanation of what it does, but also tells us what the language was. Why doesn't that spell trouble for your side? Well, I don't think that Bean applies at all. I disagree with Appellant where he said that Bean was two policies that were at the same level. They were not. In Bean, there was a primary policy, which because the person was in a non-owned car became excess, and the other policy was an umbrella policy. So a primary policy and an umbrella policy are not on the same footing. The primary policy is going to come first before an umbrella policy. Even though it became excess? Yes, because, I mean, if you look to. Excess to what? Even though it became excess to other insurance, it's different than an umbrella policy. An umbrella policy is specifically written to be over, why it's called umbrella, right? To be over underlying primary insurance. So they're underwritten differently. The premiums are different. The risk is different. It's just a different animal than a primary policy. A primary policy is on the risk. Now, there may be another insurance clause that renders it excess under certain factual circumstances, but it doesn't change the fact that the nature of the policy itself is very different than an umbrella policy. I'm trying to get a handle on Florida insurance law. I'm not sure I'm succeeding in my own mind, but is it part of your argument that to have mutual repugnancies, the policies have to be the same in terms of their operation? Yes. You can't compare a primary with an umbrella. You can't compare an umbrella with an excess, so forth and so on. Correct. What's the best thing you've got under Florida law that lays that out clearly? I couldn't find anything one way or the other explaining that proposition of law. It makes sense to me as a common sense matter, but I couldn't find any Florida case that said it that way. I'm not sure off the top of my head which case says that exactly. I think you can glean it from the all state versus executive car case, which is a Florida Supreme Court case. I think in Ferris, if you, well. That's okay. If there's nothing expressly on point, there's nothing expressly on point. It was just a question. You want to get to your cross appeal? That's kind of the follow up to my question, because again, it seems that initially there in the record, there was a question about whether or not Zurich owed anything. In an abundance of caution, Zurich submitted the $500,000, so to the extent that that question was still prevalent, it's been resolved in Gemini's favor. Then there's the question as to whether Gemini is entitled to more money, and it might be that you are successful or Zurich is successful on that point. How do we determine who is the prevailing party here for purposes of the additional judgment insurance piece? Well, before answering that exactly, I'd like to clarify part of your question, because you were saying that, I think what you were saying was that during the litigation, it was resolved that Zurich did owe the $500,000, but actually, Zurich acknowledged that it owed a pro rata amount as early as November of 2022, or I'm sorry, November 2020, which is the date that we're asking that interest should end, if there were to be interest at Because in a November 2020 letter, Zurich acknowledged that under the terms of the two policies, it did owe pro rata allocation. There was just a question about who the whole universe of carriers were and what all the available policies were so that they could figure out exactly what that amount would Then as early as March of 2021, which was five months before this complaint was filed, by March of 2021, Zurich offered the $500,000 that it ultimately paid and asked Gemini to accept it. But Gemini was still taking the position that, which it still does today, that Zurich owed a million dollars, not $500,000. If you're right, generally speaking, on prejudgment interest and the application of equity principles, why isn't the tender date the right date to stop prejudgment interest? Because if you tell someone, I understand I have some liability, but I really can't tell you how much I owe you, you're still leaving the other party in a bind. It doesn't know what you're willing to cough up. It's only when you say my liability is X, I'm ready to pay you X. Why isn't that the proper stopping point, assuming the rest of the case gets affirmed? That could be an alternate, but we still maintain that November 2020 is a proper date because there's other things to consider, which is to what extent did the opponent create the delay, create the problem in tendering the money? Here, if you look at the correspondence, which we attached in our supplemental appendix and we cited to the record, Zurich reached out to Gemini, who had the information, to ask, what are the other policies? How much is there? We want to pay our pro rata share, but we need information from you. To the extent that Gemini could have cooperated with Zurich, provided the information it needed right then, then the money could have been tendered then. Who are we going to fault for any delay? Are we going to fault the person who is trying to pay the amount but needs more information, or are we going to fault the person who is withholding the information and refuses to accept the theory of how much is owed? When did you get the information? I'm sorry? When did you, Zurich, get the information you needed? Um, I believe that they got the information shortly before the March 2021 letter, where they offered to pay the $500,000. Is that in the record anywhere? Yes, it is. It's cited in our brief. Okay. Can I ask, this just seems, I mean, I understand that's your argument, but it just seems really, really complicated. I mean, why isn't the right answer just the district court granted their summary judgment motion and gave them a judgment for $500,000? But the court did not grant their summary judgment motion. If you look at the record site to the order on summary judgment, the order actually states that summary judgment is entered in favor of Zurich, because the parties filed competing motions for summary judgment that dealt with this issue of, did the Zurich policy pay first, or was it pro rata? And the judge agreed with Zurich's legal position that the policies paid pro rata, and the judge entered a summary judgment order that stated that summary judgment was entered in favor of Zurich. And that's the whole reason that we are stating that the judgment, that the separate judgment that was entered is legally incorrect and should be changed. And then, of course, if this court changes that, then there would be no pre-judgment interest. The district court did enter a judgment in favor of the plaintiff for $500,000, right? Correct. I mean, is your real argument that that judgment should have been for zero? Our real argument was that there should have been a judgment in favor of Zurich, rather than in favor of Gemini. What amount? Judgment is favored and rendered in favor of Zurich. Zurich shall pay $500,000. Well, no, because Zurich had already paid the $500,000. So the complaint sought... That's what I don't remember from the procedural history of the case. When was that money tendered and accepted? Pre-lawsuit? Post-lawsuit? The money was actually paid post-lawsuit. Okay, so at the time the lawsuit gets filed, Zurich hasn't paid. Correct. Right? And so there's a live controversy, at least at the moment the case is filed, about Zurich's money. But because the court ruled in our favor on the summary judgment, he could have entered a judgment declaring, because that was a large part of this complaint, was seeking a declaratory judgment. So it could have been a judgment declaring that Zurich was correct, that it's entitled to the pro-rata allocation, that that is $500,000, which has already been paid because there had been papers filed with the court already at that point acknowledging by both parties that the $500,000 had been paid. So the judgment could have declared the party's rights, could have acknowledged that the $500,000 had already been paid, and therefore there would be no need to enter a money judgment. I guess this just goes to, it seems like you're not challenging the pre-judgment interest so much as the idea that a judgment should have been entered against you at all. I mean, on what, I mean, I'm looking at the judgment right now. I mean, the district court entered a $500,000 judgment against you. So do you owe them $500,000? No, it's been paid. Yeah, and your position was at trial, you didn't know, I mean, during the Correct. You didn't know the $500,000. At the time the judge entered that judgment, it had already been paid, and the judge knew that it had already been paid. And that's why that judgment on its face is legally erroneous, and that's why we cross appealed to get that changed. But if the district court had said as a legal matter, Gemini is entitled to a judgment in its favor for $500,000, execution shall not issue because that $500,000 has already been paid. Would that have been an appropriate judgment? That would have been better. And Gemini would have still been the prevailing party then. At the time, see, at the time lawsuit is filed. Zurich hasn't paid. So Gemini is suing to get money. It obviously wants a million, but litigants don't always get what they want. It could get less. And so if you see the case from the beginning of the lawsuit, Gemini is a prevailing party. It prevailed on its claim, which was live at the time that Zurich owed it some contribution. It's just that you paid that liability before judgment was issued. But that just goes to execution and whether or not the district court is going to allow any collection efforts afterwards. Well, we would still take the position that Gemini did not prevail because its only position throughout the entire litigation was that Zurich owed a million dollars. And it never prevailed. That can't be right. Because think of a plaintiff in a torch suit who says the defendant committed a negligent act and I've been injured to the tune of $1 million. Prevails on liability, but the jury or a judge after a bench trial awards $300,000. Is that plaintiff a prevailing party? They are a prevailing party. Even though they didn't get what they wanted. Right. Although I've never actually seen a complaint in a tort case where the plaintiff asks for a specific sum. Almost like an account stated type of complaint where there's a specific sum you're seeking, which you're claiming that's my level of damages as opposed to just. Okay, think. Okay. But I understand your point. And if that were the case, if the court had acknowledged that the $500,000 had been paid, then that judgment would be at least more accurate than the judgment that was entered. And it would still raise the point about the court abusing its discretion in awarding pre-judgment interest under the factual circumstances here. Okay. Okay, Ms. Ryder. Thank you very much. Okay, Mr. Sobern. With respect to the pre-judgment interest issue. She hadn't started the clock yet, so I wasn't sure. I think you're the one on the time. Okay, sorry. That happened before. With the pre-judgment interest. If I understand Counselor's argument, one could see that if the issue was simply whether or not Zurich owed Gemini $500,000, the $500,000 has been paid. The case is moot, right? But you were pursuing the case because you wanted an additional $500,000 that you did not get. So why are you not, in some way, the losing party? That's a good question, Your Honor. Let me answer it this way. We filed the action seeking recovery, both declaratory and also contribution and damages. Zurich responded to that complaint by moving to dismiss. They did not answer that complaint by saying, yes, we owe coverage. Yes, Gemini is entitled to funds and the amount is $500,000 and here it is. They didn't do that. They moved to dismiss saying that Gemini had not stated a claim upon which relief could be granted. Once several months passed, we filed the complaint in August 2021. In March 2022, a check arrives and it's for $500,000. The lawsuit has been going. We've been litigating. We've had a conference with the court. We've responded to the motion to dismiss. The judge has entered an order saying, can you tell us about how these policies interact? And then I get the $500,000 check. We prevailed for a number of reasons, but one thing that Zurich's attorney has not addressed in the briefing or in the argument today is that they sought to dismiss Gemini's complaint. The $500,000 that was offered before the lawsuit was a settlement offer in exchange for some other concessions. Just as they sent the $500,000 check in March 2022 when the loss after the lawsuit was pending for a while, they could have sent the $500,000 check prior to the lawsuit and said, here it is. If you think you owe more, I mean, I'm sorry. If you think we owe more, you know, have at it, but this is what we owe. So we were a prevailing party. Otherwise, a party could avoid prejudgment interest by denying, denying, denying in response to a complaint, moving to dismiss, and then we see the writing on the wall, cut the check, and now they don't owe prejudgment interest. And I would cite to the Validza case, if I pronounce it correctly, that Zurich has cited in their brief. It says very clearly on prejudgment interest that plaintiff is entitled as a matter of pecuniary loss if there's an out-of-pocket amount, which we had here. So therefore, it says as a matter of law, we were entitled to prejudgment interest. Now, when you get to the equitable factors, that's abuse of discretion. And what we would say here is that the Validza case, the court said that prejudgment interest should not have been allowed on the equitable amounts because the defendant had advanced that money prior to the lawsuit and the eventual judgment was less than that amount or equal to that amount. That's not what we have here. We did not receive the funds until after the lawsuit was in place. Can I ask you, what is the legal basis for the $500,000 judgment? That's a good question because the limit of Zurich's policy is $1 million. And so if we look at Zurich paid $2 million toward the $3 million settlement, the most that Zurich would owe would be its policy limit. If Zurich's limit was $2 million, then we would have sought $2 million. I guess my point is, before the judgment was issued, they paid you the $500,000. So why did the district court then enter a judgment directing them to pay you $500,000 with, I mean, it says that execution will issue. Yeah, and we thereafter filed the satisfaction of the judgment because it had been satisfied. Yeah, but the satisfaction of the judgment happens post-judgment. Here it was already paid. I guess just to go back to Judge Abudu's point, I mean, isn't this, if you sue me, I mean, I think you'd agree about this. If you sue me for $500,000 and then I pay you the $500,000, there's no basis for a district court to then enter a judgment directing me to pay you $500,000, right? It depends when you paid it. I mean, if you paid it, I agree, as stated, yes. So your position is that you can continue to litigate the case basically just over pre-judgment interest? No, we did not continue to litigate the case after the judge decided that it was pro-rata contribution except to ask for pre-judgment interest, which we had asked for. Yeah, because you want more than the district court was willing to pay. No, because that's part of, that was saying that was part of our damages. That's a pecuniary loss, that even though we received the $500,000 in March 2021, we were entitled to the interest through that date. Right. And so perhaps the judgment should have been for the interest on the $500,000 instead of the $500,000, but we're still the prevailing party because we were found, Zurich was found to have owed money to Gemini, even though it answered the complaint saying motion to dismiss and had not provided that with those funds before the lawsuit. Maybe the way to ask this is, so you just laid out sort of a slippery slope argument where you said, look, if we don't win here, then a defendant can be sued and then file a motion to dismiss and fight the lawsuit and then pay the money before a judgment is issued and then not owe pre-judgment interest. Why is that a bad thing? I guess in my head, I'm trying to figure out why that's a problem that we need to . . . Because of pre-judgment interest in Florida is compensatory damages. So at the time that Zurich paid the $500,000 in March 2021, by then, Gemini had been out the funds, the record shows, since February 2019, so approximately two years. So that's why, because it's part of the compensatory damages. We were seeking the million dollars plus the interest on that as compensatory damages. The court said $500,000 and then we said, oh, but we also get the pre-judgment interest on that because at the time they paid it, we had been out the funds for a period of two years and a month. So just to make sure I understand that, so you're saying if we were to do that, if we were to just ignore the pre-judgment interest, the right to pre-judgment interest, we'd effectively be sort of cutting out some degree of damages that you would have the right . . . We don't reach pre-judgment interest issue in this case if the court agrees that the award should have been a million dollars because then, clearly, we were prevailing and then we'd get interest on the million. So it's contingent on the first issue on the other insurance clauses. All right.  Thank you, Your Honor.